# EXHIBIT E

70 Years
RHOADS & SINON LLP

Kelly H. Decker
*ph* (717) 237-6735
*fx* (717) 231-6600
kdecker@rhoads-sinon.com

FILE NO: 9415 1

April 18, 2005

**Re: Structural Concepts, Inc. v. The United States of America, Department of the Air Force; No. 04-1141 C**

Thomas B. Fatouros
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
110 L Street, N.W.
Washington, DC 20503

Dear Mr. Fatouros:

On March 7, 2005, we served Plaintiff, Structural Concepts, Inc.'s Request for Production of Documents – First Set and Plaintiff, Structural Concepts, Inc.'s Interrogatories to Defendant – First Set. Responses were due on or before April 6, 2005. To date, we have not received responses to any discovery nor have you requested an extension of time to provide answers to the aforementioned discovery. Please provide your responses within the next 10 days.

Very truly yours,

RHOADS & SINON LLP

By: Kelly H. Decker
Kelly H. Decker

cc: Structural Concepts, Inc.

559594.1

bcc: David W. Francis, Esquire

# EXHIBIT F

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STRUCTURAL CONCEPTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1141C |
| | ) | (Judge Bush) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR DOCUMENTS

GENERAL OBJECTIONS

Defendant asserts and incorporates by reference the following general objections to plaintiff's interrogatories and request for documents as though they were set forth in full in each response to each request:

1. Defendant objects to plaintiff's first set of interrogatories and request for documents upon the grounds, and to the extent, that plaintiff seeks the discovery of information which is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.

2. Defendant objects to plaintiff's first set of interrogatories and request for documents upon the grounds, and to the extent, that plaintiff seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, or any other evidentiary privilege.

3. Defendant objects to plaintiff's first set of interrogatories and request for documents upon the grounds that the manner in which the requests are worded are so vague,

broad, general, and all inclusive that they do not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive.

4. Defendant objects to plaintiff's first set of interrogatories and request for documents to the extent that plaintiff seeks discovery of information that is exempt from disclosure by the Privacy Act of 1974, 5 U.S.C. § 552(a). Any information that is personal in nature that is provided in these responses does not constitute waiver of this objection.

5. Defendant objects to plaintiff's first set of interrogatories and request for documents to the extent that the requests seek to require defendant to provide information not within its possession, custody or control. Accordingly, the responses provided herein by the United States are solely based upon the information that is in its possession, custody or control.

6. Without waiving these above objections, defendant will provide all non-privileged information currently available to it that is reasonably calculated to lead to the discovery of admissible evidence, subject only to the specific objections set forth in the below responses and the requirements for supplementation of responses contained in RCFC 26(e).

## INTERROGATORY RESPONSES

INTERROGATORY NO. 1:

Identify each and every person who you believe may have knowledge of Contract No. F28609-99-005 and/or the project and provide a summary of each person's knowledge. Attach all supporting documents.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Unless otherwise noted, the individuals identified may be

contacted through Government counsel. Without waiving these objections, the Government provides the following response:

Linda I. Williams, 305 Contracting Squadron (CONS), Contracting Officer. Administered this contract and was the CO on many transactions. Ms. Williams retired from Civil Service in 2002.

Senior Airman (SrA) Charles "Todd" Dugan, 305 CONS, Contract Administrator. SRA Dugan was an administrator on this contract. SrA Dugan separated from the Air Force several years ago, and his current address and telephone number are presently unknown.

Kathleen DeMito, 305 CONS, Contracting Officer. Ms. DeMito signed the award of this contract. At the time of award, she was the branch chief for the construction division of the contracting squadron. Ms. DeMito is now employed at Willow Grove Air Reserve Station in Willow Grove, PA.

Technical Sargent (TSgt.) David Moore, 305 CONS, Contract Administrator. TSgt. Moore retired from the Air Force several years ago, and his current address and telephone number are presently unknown.

Edward Baker, 305 CONS, Contracting Officer. Mr. Baker took over as CO on this contract after Linda Williams retired. He is now employed at Defense Supply Center Philadelphia (DSCP).

Carlen Capenos, 305 CONS, Contract Administrator. Ms. Capenos took over as the Contract Administrator during the later stages of contract performance and saw the project through completion. She has since moved to Andersen AFB, Guam.

Dennis Tudor, 305 Civil Engineering Squadron, Chief of Engineering (305 CES/CECE).

Lorenzo "Al" Lora, 305 CES/CECS. Mr. Lora was a Contracting Officer Technical Representative (COTR) assigned to this project in the later stages of contract performance.

John Scirrotto, 305 CES/CECC. Mr. Scirrotto was the COTR assigned to this project for the majority of the contract performance period. Mr. Scirrotto currently works for the Department of the Navy.

Captain. Mark Audigier, 305 CES/CECC. Captain Audigier at one point served as the supervisor of the COTRs in the CE flight. He has since separated from the AF, and his current address and telephone number are presently unknown.

Steve Lyman, 305 CES/CECE. Mr. Lyman is Chief of Design within the CE squadron.

Captain David R. Scott, 305 CES/CECD. He was assigned to the division of CE comprised of the COTRs. He is now on an overseas assignment.

Captain Aaron Duggan. Captain Duggan worked in CE as a supervisor of the KOTRs.

Captain Christopher Dumais, 305 CES/CECC. Captain Dumais was assigned to the division of CE comprised of the COTRs. He has since separated from the Air Force, and his current address and telephone number are presently unknown.

SSgt Calvin Carter, 305 CES SSgt. Carter was a COTR on the project. His current address and telephone are presently unknown.

Robert Santoro, 305 CES/CECE, Project Manager/Engineer. Mr. Santoro currently works for the Department of the Navy.

Monica Heltz, 305 CONS. Ms. Heltz was the LGCB (construction) flight chief following Ms. DeMito. She is now employed by the Department of the Navy at Lakehurst NAS, NJ.

TSgt Kevin Selleny, 305 CES. TSgt Selleny was also a COTR on the project.

Scott D. Wilson, 305 CES/CD. Mr. Wilson is the deputy of CE who has a general knowledge of this contract and the problems that occurred.

INTERROGATORY NO. 2:

Identify the specific individuals with any knowledge of the liquidated damages assessed by the Air Force against SCI and any other issues addressed in the Air Force's counterclaim. A complete answer will identify all individuals who analyzed SCI's claim dated January 20, 2004. Provide a summary of each person's knowledge and attach all supporting documentation.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, the Government provides the following response:

Contract Administrator Carlen Capenos

Contracting Officer Eddie Baker

Scott Wilson, Deputy, Civil Engineering

Dennis Tudor, Supervisor of the Construction Flight, Civil Engineering

SSgt Calvin Carter (CE/COTR)

The entire contract file including solicitation documents has been produced to plaintiff.

INTERROGATORY NO. 3:

Identify with specificity, each and every reason that the Air Force believes the project was delayed. Specify each incident and/or item of work you believe delayed the project and explain how each incident is attributable to each delay.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Furthermore, our investigation into the facts and circumstances of this project are not completed, nor, at this time, has a scheduling expert examined the schedule of project performance if the defendant obtains the opinions of a scheduling experts those opinions will be disclosed as required under the Rules of the United States Court of Federal Claims. We have not yet formed opinions or established factual basis to assert causes for delay within the control of the plaintiff. Without waiving these objections, the Government provides the following response:

P00001, signed on April 10, 2000, incorporated Addendum 5 which suspended certain work elements, extended the period of performance and rescinded the suspension of work. The period of performance was extended to allow the Government to obtain funding for asbestos removal. The period of performance (delivery) was extended from November 25, 1999, to January 13, 2001. Work was suspended on February 22, 2000, to allow the Government time to obtain additional funding.

The January 31, 2002 letter from contracting officer Linda Williams suspended work pending Government obtaining additional funding for changes to the contract. P00009, issued May 29 2002, rescinded the suspension of work, incorporated changes to the scope of the contract, and extended the period of performance to October 12, 2002. This modification compensated SCI in the amount of $124,500 to proceed with work.

P00010 corrected P00009, again rescinding the suspension of work issued on January 31, 2002. This modification was also issued on May 29, 2002.

Additionally, during a site visit on July 22, 2002, Government representatives (SSgt Carter and Mr. Mike Murphy) verbally advised SCI that the suspension had been lifted and the keys to the facility were handed to SCI at the time so work could recommence.

P00012, dated February 25, 2003, extended the period of performance three additional days to November 28, 2002, to allow SCI to correct un-level conditions in the second floor bathrooms and vestibule doorways.

P00015, dated August 28, 2003, added funds to the contract to replace/repair eight coil fans allegedly damaged by the Government. This modification also added 16 additional days to the performance period, making delivery of Building 2704 due on December 19, 2002.

As reflected above Government-caused delays were caused by funding issues and differing site conditions that needed contractual remediation. The Government corrected the delays that it caused and compensated SCI for the delays, either in terms of additional time, money or a combination of both.

SCI caused various delays throughout the term of the project. For example, upon multiple occasions, SCI did not return to work after the contracting officer lifted the suspension of work. Specifically, the contracting officer lifted suspension of work on May 29, 2002, but SCI did not return to work until September 2002. Also, there were several periods of time when SCI did not properly staff the job site, thereby slowing down progress on the job. Further analysis of the "contractor-caused delays" of which the Government is aware is set forth in the contracting officer's final decision dated June 25, 2004.

INTERROGATORY NO. 4:

State with specificity the date you claim the contract was awarded to SCI. A complete answer will include:

1. if in writing, the date of the writing;
2. who signed the writing on behalf of the Air Force;
3. when it was mailed to and received by SCI; and
4. attach proof of mailing of the award to SCI and any other supporting documentation

RESPONSE:

This contract was awarded on November 30, 1998. Kathleen DeMito signed the award upon behalf of the Government and the award notification was sent to SCI via first class mail. The Government does not know when SCI received this notifiction since no record of receipt is provided with a first-class mailing. Additionally, notice of award was posted in the Commerce Business Daily.

Contract modification P00005 was executed on April 15, 2002 to compensate SCI for the claimed increased cost to SCS due to claimed irregularities in the award process. SCI was paid $345,445.00 for the claim it previously filed with the contracting officer concerning this issue. Pursuant to Paragraphs E(1) and (2) of that modification, SCI released the Government in full and agreed to accept these monies in full and final satisfaction of its claim pertaining to award irregularities and contract price. Payment constituted full and final release of any claim in conjunction with the defective award issue and bars SCI from seeking further monies or relief in connection with award notification and the award price. The entire contract file including

solicitation documents has been produced to SCI.

INTERROGATORY NO. 5:

Identify the date that the Notice to Proceed was issued and state the reasons why the Notice to Proceed was not issued within the time required by the Contract and/or promptly following the purported award of the Contract.

RESPONSE:

The Notice to Proceed was issued on or around June 30, 1999. SCI challenged its status as contract awardee and initially refused to perform the contract.

INTERROGATORY NO. 6:

Identify all information in the Air Force's possession with respect to termite infestation within VOQ 2704 prior to and at the time of the bid. A complete answer will include all information provided to the prospective bidders, all testing and investigations performed by the Air Force and/or its consultants concerning any potential termite infestation, all correspondence between the Air Force and its consultants regarding the termite infestation. Attach all supporting documents.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, unduly burdensome, and not calculated to the discovery of admissible evidence. Without waiving these objections, the Government provides the following response:

There are no documents in the solicitation/contract file that identify or refer to termite infestation within VOQ 2704 known by the Government prior to bid closing. There are no termite inspection reports dated prior to bid closing. We are not aware of any other documents in the

possession of the Government, dated prior to bid closing, that refer to termite infestation. The entire contract file including solicitation documents has been produced to SCI.

INTERROGATORY NO. 7:

State whether the Air Force had sufficient funding for the project for the following time periods. Attach all supporting documentation:

a) 10 August 1999 to 25 October 2002;

b) 26 October 2001 to 3 January 2002; and

c) 2 January 2002 to 1 August 2003.

RESPONSE:

The Government objects to Interrogatory No. 7 upon the grounds that it is vague in that "sufficient" is not adequately defined. Without waiving this objection, the Government provides the following response:

At no point was the Government deficient in the funding of this contract. Upon several occasions it appeared that there would be a funding short fall due to changes in the scope of work. Funds were either obtained or work was formally suspended by the contracting officer until such time as the funding became available. Suspension of work occurred on two occasions as identified in response to Interrogatory No. 3. The supporting contract documents supporting have been provided.

INTERROGATORY NO. 8:

State whether you contend that the Contract was a firm fixed price contract or a cost reimbursement contract. A complete answer will identify whether the Contract was a firm fixed priced contract or a cost reimbursement when the project was let for bid; whether the Contract

was a firm fixed priced contract or cost reimbursement when the contract was awarded to SCI; whether that characterization (firm fixed price contract or cost reimbursement) was ever changed; who changed the characterization of the Contract and the reason for the change. Attach all supporting documentation.

RESPONSE:

The Government objects to Interrogatory No. 8 upon the grounds that it calls for a legal conclusion and the contract documents speak for themselves in defining the nature of the contract. Without waiving any objection, we respond as follows:

This contract was solicited, awarded and always remained a firm fixed price contract.

INTERROGATORY NO. 9:

State whether you contend that there were any errors and/or omissions in the contract documents, including the plans, drawings and specifications. A complete answer will identify all of the errors and/or omissions you claim existed in the contract documents.

RESPONSE:

The Government objects to Interrogatory No. 9 upon the grounds that it is vague in that "errors and/or omissions" is not adequately defined. Without waiving this objection, the Government provides the following response:

The Government is unaware of any error/or omission contained in the contract documents.

INTERROGATORY NO. 10:

Identify all durations for which the Air Force ordered a suspension of work on the project. A complete answer will also state the reasons for suspensions of work orders and the reasons the suspension orders were rescinded.

RESPONSE:

See the response above to Interrogatory No. 3.

INTERROGATORY NO. 11:

State the names and addresses of each person whom you will call as an expert witness at a trial of this matter and as to each expert witness, identify the subject matter in which the expert will testify; the substance of the facts which the expert will testify; the substance of the opinions to which the expert will testify if called; and a detailed summary of the expert's grounds for each opinion.

RESPONSE:

The Government has not determined the identity of any expert witnesses that will provide expert testimony in this matter.

INTERROGATORY 12:

State the names and addresses of all fact witnesses who you intend to call at the trial and provide a concise summary of the testimony expected from each witness.

RESPONSE:

The Government has not determined which witnesses will provide testimony in this matter.

DOCUMENT REQUEST RESPONSES

DOCUMENT REQUEST 1

The Air Force's entire project file for the project.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 2

All contacts, revised contracts, agreements, modifications, addenda, and amendments to solicitation relating to this project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 3

All documents which comprise the contract between the Air Force and SCI including all documents which reference or are related to the Contract.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 4

Any and all documents relating to the design of the project. This included, but is not limited to, all correspondence, copies of plans, drawings, specifications, shop drawings and modifications, addenda, meeting minutes, proposals, budgets, notes, reports, investigations, or other such documents.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 5

Any document itemizing or relating to any errors, omissions, or discrepancies contained in the plans, drawings and specifications for the project.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 6

Any correspondence with the design professional or its insurance carrier for the project regarding the plans, drawings and specifications for the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 7

Any and all documents relating to the award of the contract to SCI, including but not limited to proof of mailing and/or receipt of the award by SCI.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 8

Any and all documents relating to the issuance of the notice to proceed for the project,

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 9

Any and all documents relating to the issuance of the contract documents for bidding, including but not limited to all documents used or referred to in assembling the contract documents.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 10

Any and all minutes, memoranda, agendas or notes of any periodic meetings held during the assembly of bidding documents, during the issuance of the bidding document, during the evaluation of bidding documents and during the award of the project.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 11

Any and all memoranda and notes, including memoranda or notes of telephone conversations, relating to the compilation or preparation of the estimate of time predicted to complete the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 12

Any and all documents relating to the construction of the project.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 13

All project diaries and log maintained by the Air Force during the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 14

All progress reports.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad and vague. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 15

All Request for Information.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad and vague. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 16

All consultants' reports and documents regarding any inspections or evaluations of the progress of the work.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 17

All punch lists and close out documentation.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 18

All warranty documents.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 19

All project schedules including bar charts, CPM schedules, updates to schedules and any corresponding narrative reports.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 20

All non-privileged documents, including drawings and plans, showing the site conditions at the project prior to the start of construction.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 21

All documents or drawing, depicting or purporting to depict "as-built conditions for the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 22

All laboratory and testing results regarding termite infestation at the project site, including when the testing was performed and whether it was disclosed during the bidding or contract formation phase.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 23

All documents relating to asbestos and/or lead removal at the project site.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 24

All documents relating the Air Force's decision to shut down the heat in the building in or about January 2004.

<u>RESPONSE:</u>

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

<u>DOCUMENT REQUEST 25</u>

All documents relating to the SCI's request for a modification for the replacement of the HVAC fan coils in the building that burst due to the lack of heat in the building.

<u>RESPONSE:</u>

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

<u>DOCUMENT REQUEST 26</u>

Any and all documents and backup files supporting your decision(s) to approve or deny SCI's requests for Modifications for this project, including but not limited to, notice letters, memoranda, or statements, including letters, materials, and schedule analysis of the impact of the changed work .

<u>RESPONSE:</u>

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

<u>DOCUMENT REQUEST 27</u>

All Modifications issued on the project.

<u>RESPONSE:</u>

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 28

Any and all memoranda, reports, charts, notes, working papers, or other documents and summaries thereof pertaining to any all delays claimed by you of SCI's performance of work on any of its contractual obligations with regard to the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 29

All documents regarding the Air Forces's ability/inability to obtain necessary funding for the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 30

All Contractors Quality Control Reports, daily logs of construction and/or other daily reports relating to the project whether prepared by the Air Force or any other entity.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 31

Any and all notes, correspondence, email correspondence, meeting minutes or other documents concerning the Contract and/or project.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and unduly burdensome. Without waiving these objections, all non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 32

Any and all documents purporting to be certifications of substantial or final completion.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 34

Any and all certificates of occupancy or other documents demonstrating when the Air Force took occupancy of the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 35

All documents relating the date the Air Force claims is the completion date for the project, including any and all proposals or unilateral decisions by the Air Force regarding the project completion date.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 36

Any and all suspension notices or other similar documents issued by the Air Force during the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 37

A complete list of dates when the Air Force suspended work on the project.

RESPONSE:

All non-privileged responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 38

All documents relating to the Air Force's decision to later change the characterization of the contract initially from a lump sum price to a cost reimbursement contract, and the actual method of payment to SCI contract.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and reflects SCI's legal characterization of this case. Without waiving these objections, any non-privileged documents potentially responsive to this request are attached to the appendix of this response.

DOCUMENT REQUEST 39

All documents relating to the Air Force's decision to later change the method of payment to SCI from cost reimbursement to lump sum contract.

RESPONSE:

The Government objects to this request upon the grounds that the request is overly broad, vague, and reflects SCI's legal characterization of this case. Without waiving these objections, any non-privileged documents potentially responsive to this request are attached to the appendix of this response.

DOCUMENT REQUEST 40

Any and all documents that the Air Force intends to use or introduce at trial.

RESPONSE:

The Government has yet to determined which documents it intends to introduce at trial.

DOCUMENT REQUEST 41

Any and all documents identified in answers to Interrogatories.

RESPONSE:

All responsive documents in the Government's possession are attached to the appendix of this response.

DOCUMENT REQUEST 42

Any and all expert reports generated by any expert witness whom the Air Force intends to call at the trial of this case.

RESPONSE:

See our response to Interrogatory No. 12.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

THOMAS B. FATOUROS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 307-5958
Fax: (202) 514-7965

June 22, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 22nd day of June 2005, I caused to be served by overnight delivery service copies of "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR DOCUMENTS" addressed as follows:

David W. Francis
Rhoads & Sinon LLP
One South Market Square 12th Floor
Harrisburg PA 17101
(717) 233-5731

# EXHIBIT G

70 Years
RHOADS & SINON LLP

David W. Francis
ph (717) 237-6738
fx (717) 231-6600
dfrancis@rhoads-sinon.com

FILE NO: 9415/1

August 5, 2005

**Re: Structural Concepts, Inc. v. The United States; United States Court of Federal Claims Docket No. 04-1141C (Judge Bush); Completion of Discovery**

VIA E-MAIL AND U.S. MAIL
Thomas B. Fatouros
United States Department of Justice; Civil Division;
Attn: Classification Unit
1100 L St. N.W.
Washington, D.C. 20530

Dear Mr. Fatouros:

This letter follows up on and supplements our telephone discussion regarding discovery in this matter.

First, I informed you that the Answers to Interrogatories ("Answers") were not verified or signed as required by RCFC 33(b)(1) and (2). Please provide this as soon as possible.

Second, the Answers appear to have numerous deficiencies and/or unresolved issues. I address these below:

*Interrogatory No. 1.* This interrogatory required you to identify the residential and business address of the individuals you named. This was requested so that SCI could obtain discovery from these witnesses. You volunteered that you would arrange for all contact with these individuals. However, several of the named individuals are no longer employed by the United States. As an example, Linda I. Williams is retired. For each witness who you do not control, please provide their business and residential address so that they may be subpoenaed.

*Interrogatory No. 5.* This interrogatory requested you to state the reason the notice to proceed was not issued within the time frame required by the contract and/or promptly after the award of the contract. There is no dispute about the fact that the notice to proceed was issued beyond the specified deadline. In fact, the Air Force has produced documents which document that the award was not in accordance with law. Please provide the specific reason why the notice to proceed was not issued as required by the contract.

*Interrogatory No. 8.* This interrogatory asked you to state whether the characterization of the contract between "fixed price" and "cost reimbursement" was ever changed and who changed the characterization. Your response says that the contract "always remained a firm price contract." This is inconsistent with the Air Force's own documents. There are numerous

573950 1

documents reflecting that the contract was treated as a cost reimbursement contract for a substantial period of the contract duration. Accordingly, please provide a complete answer to this interrogatory.

Second, I informed you that, based upon my preliminary review of the documents you provided, it appears that the Air Force has not yet provided all documents responsive to SCI's request. Many of the e-mails provided reference attached documents; however it does not appear that the Air Force has attached all of these documents. As an example only, audit report 6341-2001K17200005 addressed the problems in the award process. This document was not in your production of documents. It does not appear to have been identified in your privilege log. Please provide this document or set forth a specific basis justifying your refusal to do so.

Third, I advised you that I would like to take the depositions of the following individuals: Linda Williams, Edward Baker, Carlen Capenos, Dennis Tudor, Lorenzo Lora, John Scirrotto,, LTC Bryan Smith, CPT David R. Scott and SSG Calvin Carter. You informed me that the United States would attempt to produce these witnesses. Please contact me as soon as possible if you are unable or unwilling to do so. SCI reserves the right to take additional depositions.

Fourth, your privilege log is deficient. It does not provide sufficient information to justify the withholding of information. The log does not identify the specific topic of the document, the specific basis for the allegation that it is either a protected attorney-client communication and/or work product or the identity of the individual to who it was provided. Based upon this lack of information, it is extraordinarily difficult to assess your claim of confidentiality. There is no reason provided as to why confidential information cannot be redacted from the documents identified. Please address this deficiency.

Fifth, you have provided me with attorney communications. As an example only, you provided me with a copy of an e-mail from Major Brian T. Varn, then a Judge Advocate stationed at the Air Force Material Command Legal Office which specifically addressed how the Air Force misinterpretation of the contract was its fault, that the threat of liquidated damages was most likely "toothless" and that the Air Force was going to "bluff" SCI as to their imposition; that the Air Force was at fault for SCI's loss of its HVAC sub-contractor, questioning whether I am sophisticated enough to understand this, admitting that SCI's arguments are "VERY good" (emphasis in the original), and stating that the Air Force "are **still** the bad guys on this one" (emphasis in the original). The e-mail further suggests that this information should be withheld from SCI. You provided it to me more than once. I am enclosing a copy of this document for your review.

I am advising you about this so that you may address whether the disclosures were inadvertent, and whether the Air Force would like to have the documents returned. If so, please identify the specific documents and provide me with a justification supporting your request that the documents be returned. Please ensure that your justification and evidence fully complies

with the standard set forth in *I.B.M. v. United States*, 37 Fed. Cl. 599, 1997 U.S. Claims Lexis 33 (1997). SCI will then review your position and respond appropriately.

Finally, you asked whether SCI would agree to an extension of time for the completion of discovery in this matter. I told you to put any such request in a letter and that I would forward it to SCI for its review.

Thank you for your attention to these matters.

SCI reserves all rights.

Very truly yours,

RHOADS & SINON LLP

By: 
David W. Francis

Enclosure

cc: George Moutis

**Lora Lorenzo GS-09 305 CES/CECC**

**From:** Selleny Kevin M TSgt 305 CES/CECC
**Sent:** Wednesday, March 19, 2003 9:24 AM
**To:** Lora, Lorenzo
**Subject:** FW: LDs and agreement

Al,

F.Y.I.
Remember, this stays in-house Not a word to the contractor.
Thanks!

KEVIN M. SELLENY, TSgt, USAF
NCOIC, Construction Management
305 CES/CECC DSN 650-5019

-----Original Message-----
**From:** Tudor Dennis I GM13 305 CES/CEC
**Sent:** Tuesday, March 18, 2003 7:57 AM
**To:** Selleny Kevin M TSgt 305 CES/CECC
**Cc:** Meadows Tasha R Capt 305 CES/CECP
**Subject:** FW: LDs and agreement

for you action as required.

Dennis I Tudor
Chief Engineer
McGuire AFB NJ, 08641
1-609-754-6184
DSN 650-6184

-----Original Message-----
**From:** Wilson Scott D GM14 305CES/CD
**Sent:** Tuesday, March 18, 2003 7:50 AM
**To:** Tudor Dennis I GM13 305 CES/CEC; Meadows Tasha R Capt 305 CES/CECP
**Cc:** Smietana Michael Lt Col 305 CES/CC
**Subject:** FW: LDs and agreement

The advice of Wright Patt lawyer, Brian Varn, is that we should go ahead and make payments, regardless of our position that he owes us LDs. However, we need to do a good job of assuring we don't overpay That is, make sure we're withholding everything we have a right to At some point, we may need to estimate the cost of performing the remaining work (if he has a long punchlist), and determining the final payment based on (total cost minus cost to complete)

And please tell our inspector not to divulge this legal advice to the contractor We're far from resolving this and he shouldn't know what our lawyers are telling us

-----Original Message-----
**From:** Erazo Lidija GS-13 305 CONS/LGC
**Sent:** Monday, March 17, 2003 4:36 PM
**To:** Wilson Scott D GM14 305CES/CD

**Subject:** FW: LDs and agreement

*Scott,*

*Below is the response from Maj Varn on LDs related to Bldg 2704.*

*Lidija Erazo*
*Director of Business Operations*
*DSN: 650-5929*
*Com: (609) 754-5929*

-----Original Message-----
**From:** Capenos Carlen L GS-9 305 CONS/LGCB
**Sent:** Tuesday, March 11, 2003 9:38 AM
**To:** Burke Brendan P 1stLt 305 CONS/LGCB; Erazo Lidija GS-13 305 CONS/LGC
**Subject:** FW: LDs and agreement

Per our Thursday meeting with CE - I asked the question to Maj Varn about the LDs. Here is his response Carlen
-----Original Message-----
**From:** Varn Brian T Maj AFMCLO/JABE
**Sent:** Tuesday, March 11, 2003 9:13 AM
**To:** Capenos Carlen L GS-9 305 CONS/LGCB
**Subject:** RE: LDs and agreement

I think you are more correct. I definitely understand CE's concerns, but I think CE is forgetting our very untenable position on the rest of the contract Frankly, our threat to hold any of the LDs against him is most likely "toothless" because the misinterpretation of the contract is our fault. In large part, the LDs are a bluff and so far he's bit into it so we should just let it ride (at trial, we'll most likely end up paying a large portion of them back). If you are happy with the progress, then I think that is what is most important--especially if his progress is consistent and measurable.

In addition, if AMC/JA's read on the 'cost plus' misinterpretation of the contract is correct, then we for all effects and purposes, caused him to walk off the job and his loss of his HVAC sub-contractor is essentially "our" fault. I don't know if I necessarily agree with all of AMC's position on this, nor do I know if SCI's attorney is sophisticated enough to make that argument--but it is a VERY good argument none the less. We are on the short end of the stick on this, no matter what we do--so reasonable accommodation of the contractor is really the best we can hope for

I agree with you. If we start withholding, it is going to cause nothing but problems. Short term in getting the job done, and long term at negotiations/ADR/litigation if necessary Everyone needs to remember that "we" are still the bad guys on this one. We need to proceed with care and caution

Hope this helps. Shout if you need more.

Brian

-----Original Message-----
**From:** Capenos Carlen L GS-9 305 CONS/LGCB [mailto:Carlen.Capenos@mcguire.af.mil]
**Sent:** Monday, March 10, 2003 4:23 PM
**To:** Varn Brian T Maj AFMCLO/JABE
**Subject:** LDs and agreement

ATTORNEY-CLIENT PRIVILEGE

Brian,

Structural has not signed the agreement for a completion date for Bldg 2704. Therefore, we do not have a modification extending the period of performance He submitted an invoice and it is being processed.

CE asked if we were holding the LDs since the completion date at this point it still 28 Nov 02. I said no. They think we should be holding so in case he walks away, at least we have that little bit. I disagreed. They disagreed with me and we agreed to get your take on it

My opinion is that at this point things are actually moving along - mostly to do with good communication and "good faith." I'm afraid that if we hold LDs we are really going to antagonize him Additionally, thinking down the road when we end up in court, it will make us look bad, even if we technically are correct On the other hand, would LDs even stick?

We have a progress meeting tomorrow and I'll see if he will sign it. He is having a problem with his HVAC contractor committing to completion

Also - CE was worried about getting any money back on LDs if he doesn't complete on time. He does have a MAC contract at Lakehurst, so we could always get money from there if he owes us LDs and we are authorized to take them

If you need more info, call me: DSN 650-5935 or 609-754-5935 in case your on the road.
Carlen

## Lora Lorenzo GS-09 305 CES/CECC

**From:** Smith Bryan Lt Col 305 CES/IMA
**Sent:** Tuesday, February 03, 2004 2:15 PM
**To:** Lora Lorenzo GS-09 305 CES/CECC
**Subject:** RE: 2704 Files

No I am not kidding, but I'm not tasking you to do it. I'm just checking to see if your bosses have ignored this tasking They may want Joanne to do it or maybe they want to send it out for copying. Don't do anything yet, unless you hear from your boss

Thanks,
Bryan

-----Original Message-----
**From:** Lora Lorenzo GS-09 305 CES/CECC
**Sent:** Tuesday, February 03, 2004 2:09 PM
**To:** Smith Bryan Lt Col 305 CES/IMA
**Subject:** RE: 2704 Files

Currently, just one box that I'm aware of I will have to check another office to make sure. In addition, I was not tasked to copy my files yet. Please tell me you are just kidding.

Lorenzo A. Lora, GS-09, USAF

COTR, Construction Management

DSN: 650-3522