IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STRUCTURAL CONCEPTS, INC.,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 04-1141C
    )    (Judge Bush)
THE UNITED STATES,    )
    )
    Defendant.    )

## DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

JEFFREY D. KLINGMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-4436
Facsimile: (202) 353-7988

Of Counsel:
LARRY M. ANDERSON
Commercial Law and Litigation
Directorate
AFLOA/JAQ
1500 West Perimeter Road, Suite 1780
Joint Base Andrews, MD 20762

August 5, 2011

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES. .................................................................................................. 1

STATEMENT OF THE CASE................................................................................................ 2

    I.    Nature Of The Case........................................................................................ 2

    II.    Statement Of Facts. ....................................................................................... 2

ARGUMENT. ....................................................................................................................... 5

    I.    Standard Of Review. ...................................................................................... 5

    II.    The Government Is Entitled To Partial Summary Judgment Upon
        The Liquidated Damages Claims Because SCI Has Failed To Satisfy
        Its Burden Of Showing Entitlement To Excusable Delay..................................... 6

        A.    This Court Does Not Possess Jurisdiction To Entertain
               SCI's Material Breach Claims Or Any Claims For Excusable
               Delay Beyond August 1, 2003. .................................................................. 8

               1.    The CDA Requires A Contractor To Present To The
                      Contracting Officer All Bases Of Excusable Delay
                      That It Asserts Against The Government's Liquidated
                      Damages Claim. ........................................................................... 8

               2.    This Court Does Not Possess Jurisdiction To Entertain SCI's
                      Material Breach Claims Or Any Claims For Excusable Delay
                      Beyond August 1, 2003.............................................................. 11

        B.    The Alleged Material Breaches Do Not Constitute Excusable Delay. ..... 12

               1.    SCI Was Required To Continue Working Regardless
                      Of A Delay In Payment............................................................... 12

                 2.    The Government Never Extended The Contract
                      Completion Date Past December 19, 2002, And, Even If It Did,
                      SCI Did Not Satisfy The Conditions Of The "Agreement" Upon
                      Which It Purports To Rely. ......................................................... 16

C.    SCI Cannot Establish Excusable Delay For The Period Of August
1, 2003 Through January 7, 2004. ........................................................... 19

D.    SCI's Repair and Replacement Of Fan Coils Does Not Constitute
Excusable Delay..................................................................................... 21

E.    SCI Does Not Identify Any Other Excusable Delays
After May 29, 2002................................................................................. 22

CONCLUSION. ...................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Alliant Techsystems, Inc.* v. *United States*,
        178 F.3d 1260 (Fed. Cir. 1999)......................................................................... 13

*Anderson* v. *Liberty Lobby, Inc.*,
        477 U.S. 242 (1986)......................................................................................... 5, 6

*B-B Co.* v. *Piper Jaffray & Hopwood, Inc.*,
        931 F.2d 675 (10th Cir. 1991). ........................................................................ 18

*Barron Bancshares, Inc.* v. *United States*,
        366 F.3d 1360 (Fed. Cir. 2004)..................................................................... 15, 16

*Brazos Elec. Power Coop., Inc.* v. *United States*,
        49 Fed. Cl. 398 (2001). .................................................................................... 18

*Brooklyn & Queens Screen Manufacturing Co.* v. *United States*,
        97 Ct. Cl. 532 (1942). ...................................................................................... 14

*Celotex Corp.* v. *Catrett*,
        477 U.S. 317 (1986).......................................................................................... 5, 6

*Cities Serv. Helex, Inc.* v. *United States*,
        543 F.2d 1306 (1976)......................................................................................... 15

*City of Tacoma, Department of Public Utilities* v. *United States*,
        31 F.3d 1130 (Fed. Cir. 1994)............................................................................ 8

*Colum. Gas Sys., Inc.* v. *United States*,
        50 F.3d 233 (3d Cir. 1995).................................................................................. 19

*Contract Cleaning Maint., Inc.* v. *United States*,
        811 F.2d 586 (Fed. Cir. 1987)............................................................................. 8

*Dairyland Power Coop.* v. *United States*,
        16 F.3d 1197 (Fed. Cir. 1994)............................................................................. 6

*Delhur Indus., Inc.* v. *United States*,
        95 Fed. Cl. 446 (2010). ................................................................................. 12, 19

*Envtl. Safety Consultants, Inc.* v. *United States*,
    95 Fed. Cl. 77 (2010). ........................................................................................ 14

*Favell v. United States*,
    22 Cl. Ct. 132, 137 (1990). ............................................................................... 18

*Franklin E. Penny Co.* v. *United States*,
    524 F.2d 668 (Ct. Cl. 1975). ............................................................................. 21

*Hoffman Constr. Co. v. United States*,
    7 Cl. Ct. 518, 525 (1985). .................................................................................. 8

*J & A Pollin Constr. Company, GSBCA 2780*,
    72-2 BCA 8562. ........................................................................................... 8, 21

*James M. Ellett Constr. Co., Inc.* v. *United States*,
    93 F.3d 1537 (Fed. Cir. 1996) ............................................................................ 8

*Kinetic Builder's, Inc.* v. *Peters*,
    226 F.3d 1307 (Fed. Cir. 2000) ........................................................................ 21

*Landmark Land Co., Inc.* v. *Fed. Deposit Ins. Corp.*,
    256 F.3d 1365 (Fed. Cir. 2001) ........................................................................ 18

*Lester* v. *Resolution Trust Corp.*,
    994 F.2d 1247 (7th Cir. 1993). ......................................................................... 18

*Loud* v. *Pomona Land & Water Co.*,
    153 U.S. 564 (1894)........................................................................................... 19

*M.A. DeAtley Constr., Inc.* v. *United States*,
    75 Fed. Cl. 575 (2007). ...................................................................................... 9

*M. Maropakis Carpentry, Inc.* v. *United States*,
    609 F.3d 1323 (Fed. Cir. 2010).................................................................... 10, 12

*Mingus Constructors, Inc.* v. *United States*,
    812 F.2d 1387 (Fed. Cir. 1987).................................................................... 5, 8

*Modeer* v. *United States*,
    68 Fed. Cl. 131 (2005). ..................................................................................... 10

*Morganti Nat'l, Inc.* v. *United States*,
    49 Fed. Cl. 110 (Fed. Cl. 2001). ........................................................................ 15

*Northern Helex Co.* v. *United States*,
    455 F.2d 546 (Ct. Cl. 1972). ............................................................................. 14

*Novartis Corp.* v. *Ben Venue Labs.*,
    271 F.3d 1043 (Fed. Cir. 2001).......................................................................... 6

*Old Stone Corp.* v. *United States*,
    450 F.3d 1360 (Fed. Cir. 2006)......................................................................... 15

*Orbas & Assocs.* v. *United States*,
    34 Fed. Cl. 68 (1995). ..................................................................................... 10

*Park Props. Assocs., L.P.* v. *United States*,
    82 Fed. Cl. 162 (2008). ................................................................................... 18

*R.P. Wallace, Inc.* v. *United States*,
    63 Fed. Cl. 402 (2004). ............................................................................. 7, 23

*Reliance Ins. Co.* v. *United States*,
    931 F.2d 863 (Fed. Cir. 1991)........................................................................... 9

*Richlin Sec. Serv. Co.* v. *Chertoff*,
    437 F.3d 1296 (Fed.  Cir. 2006)....................................................................... 13

*Santa Fe Eng'rs* v. *United States*,
    818 F.2d 856 (Fed. Cir. 1987)). .................................................................. 9, 10

*Sauer Inc.* v. *Danzig*,
    224 F.3d 1340 (Fed. Cir. 2000)....................................................... 7, 12, 22, 23

*Scott Timber Co.* v. *United States*,
    333 F.3d 1358 (Fed. Cir. 2003)......................................................................... 9

*SMS Data Prods. Group, Inc. v. United States*,
    19 Cl. Ct. 612, 616 (1990). ............................................................................ 10

*Spirit Leveling Contractors v. United States*,
    19 Cl. Ct. 84, 88-93 (1989). .......................................................................... 10

*Sunshine Constr. & Eng'g, Inc.* v. *United States,*
    64 Fed Cl. 346 (2005). ................................................................. 7, 23

*Sweats Fashions, Inc.* v. *Pannill Knitting, Inc.,*
    833 F.2d 1560 (Fed. Cir. 1987).................................................... 5

*TGC Contracting Corp.* v. *United States,*
    736 F.2d 1512 (Fed. Cir. 1984).................................................. 12

*United States* v. *L.A. Tucker Truck Lines, Inc.,*
    344 U.S. 33 (1952).................................................................... 10

*Winter* v. *Cath-dr/Balti Joint Venture,*
    497 F.3d 1339 (Fed. Cir. 2007)................................................. 17

## STATUTES AND REGULATIONS

31 U.S.C. §§ 3901-3905. ................................................................. 14

31 U.S.C. § 3902(c)(1)...................................................................... 14

41 U.S.C. §§ 7101-09. ..................................................................... 4

41 U.S.C. § 7109................................................................................ 14

48 C.F.R. § 52.211-12................................................................. 2, 10, 19

48 C.F.R. § 52.232-27............................................................. 2, 13, 14, 15

48 C.F.R. § 52.233-1................................................................... 2, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STRUCTURAL CONCEPTS, INC.,      )
                                )
            Plaintiff,          )
                                )
      v.                        )        No. 04-1141C
                                )        (Judge Bush)
THE UNITED STATES,              )
                                )
            Defendant.          )

### DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter partial summary judgment in defendant's favor upon defendant's counterclaim and upon the claims for remission of liquidated damages and payment of the contract balance of plaintiff, Structural Concepts, Inc. ("SCI"), and deny SCI's motion for partial summary judgment. In support of this motion, we rely upon the pleadings, the following brief, defendant's proposed findings of uncontroverted fact and the appendix thereto, plaintiff's proposed findings of uncontroverted fact, and defendant's response to plaintiff's proposed findings of uncontroverted fact.

### STATEMENT OF ISSUES

1. Whether this Court possesses jurisdiction to entertain SCI's material breach claims or any claims for excusable delay beyond August 1, 2003.

2. Whether the alleged material breaches constitute excusable delays.

3. Whether SCI can establish excusable delay for the period of August 1, 2003 through January 7, 2004.

4. Whether SCI's repair and replacement of fan coils constitutes excusable delay.

5.      Whether SCI identifies any other excusable delays after May 29, 2002.

## STATEMENT OF THE CASE

## I.      Nature Of The Case

This case involves a contract for the renovation and repair of visiting officers' quarters ("VOQ") at McGuire Air Force Base, New Jersey.  In its complaint, SCI alleges, among other things, that it "is entitled to a remission of the liquidated damages" and "payment of its full contract balance."  Compl. ¶¶ 14, 17.  The Government has asserted a counterclaim for $776,448 in liquidated damages because SCI did not complete the contract by the completion date in the contract as modified.  Counterclaim ¶¶ 26-27.  In this brief, we refer to SCI's claims for remission of liquidated damages and the contract balance and defendant's counterclaim collectively as the "liquidated damages claims."

## II.     Statement Of Facts

SCI was awarded a firm fixed-price contract to repair and renovate the VOQ at McGuire Air Force Base ("contract").  PPFUF ¶ 1; DPFUF ¶ 1.[1]  Among other provisions, the contract incorporated the liquidated damages provision prescribed by 48 C.F.R. § 52.211-12 and included a liquidated damages rate of $2,022.  DPFUF ¶ 1.  The contract also incorporated the prompt payment for construction contracts clause, 48 C.F.R. § 52.232-27, and the disputes clause, 48 C.F.R. § 52.233-1.  DPFUF ¶ 1.  Moreover, the contract required SCI to install heating and cable television systems.  DPFUF ¶ 1.

The notice to proceed was issued on June 30, 1999, and construction was to be completed within 360 days, *i.e.*, by June 24, 2000.  PPFUF ¶¶ 8, 12; Def. Resp. to PPFUF ¶ 12.  Pursuant to

---

[1]  "PPFUF ¶ _" refers to paragraphs of plaintiff's proposed findings of uncontroverted fact.  "DPFUF ¶ _" refers to paragraphs of defendant's proposed findings of uncontroverted fact.  "Def. Resp. to PPFUF" refers to paragraphs of defendant's response to plaintiff's proposed findings of uncontroverted fact.

the first four modifications to the contract, the contract completion date was extended to October 26, 2001, and the original contract amount was increased from $1,835,415 to $2,447,415. PPFUF ¶ 11; Def. Resp. to PPFUF ¶ 11.

On January 31, 2002, the contracting officer ("CO") issued a suspension of work order for all work upon the contract. DPFUF ¶ 2. The order stated that the suspension would remain in effect for 90 days "to allow the Government to obtain additional funds for changes to the contract," that a 30-day remobilization period would be permitted at the expiration of the suspension period, and that if funds were not received by the end of the suspension period, a further suspension would be issued. DPFUF ¶ 2. On May 29, 2002, the Government issued unilateral modifications P00009 and P00010, which, among other things, rescinded the suspension of work order, increased the contract amount, and extended the contract completion date to November 28, 2002. DPFUF ¶ 3. SCI did not perform any work upon the project from May 29, 2002 to September 2, 2002. DPFUF ¶ 4.

Between May 29, 2002, and November 27, 2002, SCI and the Government disputed whether SCI should be paid on a cost-plus or firm fixed-price basis. PPFUF ¶¶ 15-32; Def. Resp. to PPFUF ¶¶ 15-32. On November 27, 2002, SCI stopped work upon the project. PPFUF ¶ 33; Def. Resp. to PPFUF ¶ 33. SCI resumed work upon the project on January 24, 2003. PPFUF ¶ 41; Def. Resp. to PPFUF ¶ 41.

On February 25, 2003, the parties executed bilateral modification P00012, which incorporated SCI's proposal to ensure that the second floor bathrooms and second floor vestibule doorways were level, increased the contract amount, and extended the contract completion date to December 3, 2002. DPFUF ¶ 5. On March 12, 2003, the parties executed bilateral modification P00013, which incorporated SCI's proposal to provide ADA compliant signs in lieu

of signs required by contract specifications, increased the contract amount, and stated that the contract completion date was December 3, 2002.  DPFUF ¶ 6.

In July 2003, the Government forwarded to SCI bilateral modification P00014, which would have incorporated SCI's proposal to replace and repair eight fan coils that were damaged when water was not purged from the system, increased the contract amount, and extended the contract completion date to December 19, 2002 ("modified contract completion date").  DPFUF ¶ 7.  However, SCI refused to sign modification P00014.  DPFUF ¶ 7.  Therefore, the Government issued that modification as unilateral modification P00015 on August 28, 2003.  DPFUF ¶ 7.  Heating for the facility was completed in late November or early December 2003, cable television installation was completed on January 7, 2004, and the Air Force began housing guests in the facility after January 7, 2004.  DPFUF ¶ 8.

On January 27, 2004, SCI submitted a revised certified claim to the CO pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-09.  DPFUF ¶ 9.  In the claim SCI sought, among other things, "costs . . . for extended field and home office overhead as a result of Government caused delays" from August 10, 1999 to October 25, 2000, and October 26, 2001 to August 1, 2003.  DPFUF ¶ 9.  In its claim, SCI did not allege that the Government materially breached the contract, seek an extension of the modified contract completion date (which was December 19, 2002), or assert that the Government caused any delays after August 1, 2003.  DPFUF ¶ 9.

On March 19, 2004, the CO issued a final decision that SCI owed the Government $776,448, *i.e.*, the $2,022 per day contractual liquidated damages formula applied to the 384-day period of December 19, 2002 to January 7, 2004.  DPFUF ¶ 10.  The CO found that, although beneficial occupancy was taken on September 15, 2003, "[t]he building was not complete and

capable of serving its intended purpose as Visiting Quarters" until January 7, 2004, because heating for the facility was not completed until late November or early December 2003 and the cable was not installed until January 7, 2004.  DPFUF ¶ 10.

On June 25, 2004, the CO issued a final decision denying SCI's certified claim upon the grounds that the Government could not "ascertain how the alleged lack of funding or the temporary change in contract status impacted SCI's schedule."  DPFUF ¶ 11.

## ARGUMENT

### I.    Standard Of Review

"A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim . . . at any time after . . . 60 days have passed from commencement of the action."  RCFC 56(a)(1).  Moreover, "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  RCFC 56(b).

The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the RCFC as a whole, designed to secure a just, speedy and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Sweats Fashions, Inc. v. Pannill Knitting, Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987).  Summary judgment should be granted when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant

or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  When making a summary judgment determination, a court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *Id.* at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* (citation omitted).

The moving party has the initial responsibility to identify the legal basis of its motion and to point to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing *Celotex*, 477 U.S. at 323).  Once the moving party has made that showing, the burden shifts to the nonmoving party "to designate specific facts showing that there is a genuine issue for trial."  *Id.* (citing *Celotex*, 477 U.S. at 324).  "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case."  *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law."  *Id.* (citing *Celotex*, 477 U.S. at 323).

**II.  The Government Is Entitled To Partial Summary Judgment Upon The Liquidated Damages Claims Because SCI Has Failed To Satisfy Its Burden Of Showing Entitlement To Excusable Delay**

"[A] party asserting that liquidated damages were improperly assessed bears the burden of showing the extent of the excusable delay to which it is entitled."  *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1347 (Fed. Cir. 2000) ((citations omitted)).  To establish entitlement to an extension

based upon excusable delay, SCI must prove the following:  (1) that the delay resulted from unforeseeable causes beyond SCI's control and without SCI's fault or negligence; (2) that SCI "took reasonable action to perform the contract notwithstanding the occurrence of such excuse"; and (3) that the unforeseeable cause delayed the overall contract completion, *i.e.*, that it affected the critical path of performance.  *Id.* at 1345 (internal quotation marks and citations omitted).  Liquidated damages may be apportioned where there is sequential delay.  *See Sunshine Constr. & Eng'g, Inc. v. United States*, 64 Fed Cl. 346, 371-73 (2005); *R.P. Wallace, Inc. v. United States*, 63 Fed. Cl. 402, 410-13 (2004).

SCI makes several arguments to support its position that any delays that resulted in completion of the project after the December 19, 2002 modified contract completion date were excusable.  SCI contends that the Government materially breached the contract by delaying some payments by up to five months, which justified SCI's refusal to work for approximately two months.  Pl. Br. at 4-5, 8-26.  Moreover, SCI argues that Government employees other than the CO entered into a verbal agreement with SCI to extend the completion date to May 2, June 14, or June 15, 2003 ("alleged verbal modification agreement").  Pl. Br. at 2, 6, 18, 25-26, 28, 31-32. Further, SCI contends that the Government's alleged delay in approving SCI's proposal to repair and replace fan coils and the Government's alleged delay issuing a modification that extended the contract completion date constituted Government-caused or concurrent delays.  Pl. Br. at 27-33.  SCI's arguments are without merit.  Therefore, the Government's cross-motion for partial summary judgment should be granted, and SCI's motion for partial summary judgment should be denied.

A.   **This Court Does Not Possess Jurisdiction To Entertain SCI's Material Breach Claims Or Any Claims For Excusable Delay Beyond August 1, 2003**

The Court does not possess jurisdiction to entertain SCI's material breach claims or any claim for excusable delay beyond August 1, 2003, because SCI failed to provide a clear and unequivocal statement that gave the CO adequate notice of the basis and amount of those claims.

1.   **The CDA Requires A Contractor To Present To The Contracting Officer All Bases Of Excusable Delay That It Asserts Against The Government's Liquidated Damages Claim**

To assert a proper CDA claim, the contractor must submit to the contracting officer a clear and unequivocal written demand that gives the CO adequate notice of the basis and amount of the claim. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed. Cir. 1987); *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592-93 (Fed. Cir. 1987) (certified claim must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim"). The request also must make clear that the contractor seeks a decision from the contracting officer, as distinguished from a response to a proposal, which merely is an invitation to negotiate. *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996); *Mingus Constructors*, 812 F.2d at 1395; *Hoffman Constr. Co. v. United States*, 7 Cl. Ct. 518, 525 (1985).

The CDA requirement that a contractor give the contracting officer "adequate notice of the basis and amount of the claim" forbids a contractor from asserting one theory of recovery to the contracting officer and another to this Court. Rather, the contractor must assert its theory of recovery to the contracting officer or forego the right to assert that theory in this Court. In *City of Tacoma, Department of Public Utilities v. United States*, 31 F.3d 1130 (Fed. Cir. 1994), the Federal Circuit considered and rejected a contractor's attempt to inject claims not set forth in its CDA claim, as follows:

> The city's last attempt to invalidate the contract pertains to the
> termination clause, which it characterizes as an invalid perpetuity.
> The clause provides that the contract shall continue until
> terminated at the option of the government with at least 30 days
> notice.  The city cannot now raise this challenge because it was not
> included in its certified claim to the contracting officer.  Although
> the city requested termination in its second certified claim to the
> contracting officer, it described the basis for the request as a
> dispute over the payment of electrical services.  It did not
> challenge the validity of the contract's termination clause.  *See
> Reliance Ins. Co.*, 931 F.2d at 866 (no jurisdiction to consider a
> claim not submitted clearly and unequivocally to the contracting
> officer).

31 F.3d at 1134-35; *accord Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir.

2003) (contractor's appeal must "arise from the same operative facts" and seek "essentially the

same relief" as claim submitted to contracting officer); *Reliance Ins. Co. v. United States*,

931 F.2d 863, 866 (Fed. Cir. 1991) (Claims Court did not possess jurisdiction to entertain breach

of contract claim when plaintiff submitted to the contracting officer only a request for equitable

adjustment related to an alleged change to the contract); *Santa Fe Eng'rs v. United States*, 818

F.2d 856, 858-60 (Fed. Cir. 1987)) (plaintiff may not assert total cost claim where plaintiff

submitted only claim for three change orders to contracting officer); *M.A. DeAtley Constr., Inc.

v. United States*, 75 Fed. Cl. 575, 579 (2007) ("[A] contractor may not make a claim that was not

previously presented to the CO for decision, because the CO's statutory purpose is 'to receive

and pass judgment on the contractor's entire claim.'" (citing *Scott Timber*, 333 F.3d at 1366;

*Santa Fe Eng'rs*, 818 F.2d at 858)); *Modeer v. United States*, 68 Fed. Cl. 131, 139-41 (2005)

(Court possessed jurisdiction to entertain claim for rent for Government's holdover tenancy but

not contractor's claim for utility costs, which was not submitted to contracting officer), *aff'd*, 183

F. App'x 975 (Fed. Cir. 2006); *Orbas & Assocs. v. United States*, 34 Fed. Cl. 68, 70-71 (1995)

(plaintiff may not assert one contract interpretation to contracting officer and another to court);

*SMS Data Prods. Group, Inc. v. United States*, 19 Cl. Ct. 612, 616 (1990) (plaintiff may not sue

for lost profits where only compensatory damages claim was submitted to contracting officer);

*Spirit Leveling Contractors v. United States*, 19 Cl. Ct. 84, 88-93 (1989) (rejecting differing site

conditions claim for lack of jurisdiction because contractor had not alleged differing site

conditions to contracting officer); *cf. United States v. L.A. Tucker Truck Lines, Inc*., 344 U.S. 33,

38 (1952) ("[O]bjections to the proceedings of an administrative agency [must] be made while it

has opportunity for correction in order to raise issues reviewable by the courts.").

In *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323 (Fed. Cir. 2010), the

Navy awarded a contract for, among other things, the replacement of windows and a roof at a

warehouse building.  *Id.* at 1325.  The contract included a liquidated damages clause pursuant to

48 C.F.R. § 52.211-12, which provided that the contractor would be liable to the Government for

a specified amount per day for each day of delay beyond the contract completion date.  *Id.*

Because the project was completed 467 days after the modified completion date, the Government

withheld the contract balance and asserted a counterclaim for the remaining amount in liquidated

damages that the contractor owed.  *Id.*

The Court found that the contractor had failed to submit a valid claim pursuant to the

CDA, because, among other things, the contractor did not provide the contracting officer

adequate notice of the total number of days requested in extension.  *Id.* at 1328-29.  The Court

held that "a contractor seeking an adjustment of contract terms must meet the jurisdictional

requirements and procedural prerequisites of the CDA, whether asserting the claim against the

government as an affirmative claim or as a defense to a government action."  *Id.* at 1331.

Because the Court of Federal Claims did not possess jurisdiction to entertain the contractor's

claim for time extensions, and because its extension claim was the only defense asserted against

the Government's counterclaim for liquidated damages, the Court affirmed the grant of summary

judgment to the Government upon its liquidated damages counterclaim. *Id.* at 1332.

> ### 2. This Court Does Not Possess Jurisdiction To Entertain SCI's Material Breach Claims Or Any Claims For Excusable Delay Beyond August 1, 2003

SCI contends that the Government materially breached the contract in two respects.

First, SCI appears to argue that the parties' dispute regarding whether SCI should be paid upon a

cost-plus or firm fixed-price basis and the Government's late payments upon SCI's invoices for

work performed in September through November 2002 constitute a material breach that excuses

any delays caused by SCI's refusal to work during the 58-day period of November 27, 2002 to

January 24, 2003. Pl. Br. at 8-26. Second, SCI appears to contend that SCI and Government

employees other than the CO entered into a verbal modification to the contract to extend the

completion date to May 2, June 14, or June 15, 2003. Pl. Br. at 2, 6, 18, 25-26, 28-29, 31-32.

The Court lacks jurisdiction to consider either argument.

In its January 2004 certified claim, SCI sought "costs . . . for extended field and home

office overhead as a result of Government caused delays" from August 10, 1999 to October 25,

2000, and October 26, 2001 to August 1, 2003. DPFUF ¶ 9. SCI did not allege that the

Government materially breached the contract, seek an extension of the modified contract

completion date (which was December 19, 2002), or assert that the Government caused any

delays after August 1, 2003. DPFUF ¶ 9. Thus, SCI did not provide the CO adequate notice that

it was claiming material breach of contract, or that it was seeking a time extension beyond

August 1, 2003, and this Court does not possess jurisdiction to entertain SCI's claims that the

Government material breached the contract. For this reason alone, the Government is entitled to

partial summary judgment upon the liquidated damages claims for the 158-day period of August 2, 2003 to January 7, 2004. *See Maropakis*, 609 F.3d at 1328-32.

### B.      The Alleged Material Breaches Do Not Constitute Excusable Delay

Even assuming for the sake of argument that the Court possesses jurisdiction to entertain SCI's claims of material breach, SCI does not cite any evidence that would show that the alleged material breaches, *i.e.*, the delayed payments resulting from the parties' dispute regarding the type of contract between them, or the asserted breach of the alleged verbal modification agreement, delayed the overall contract completion, *i.e.*, affected the critical path of performance. *See Sauer*, 224 F.3d at 1345.  In fact, SCI does not argue – or cite any evidence showing – that the payment delay or asserted breach of the alleged verbal modification agreement caused *any* delays in SCI's project performance. *See Delhur Indus., Inc. v. United States*, 95 Fed. Cl. 446, 469 (2010) ("Delhur has failed to present any schedule analysis or other persuasive evidence, and therefore has not met its burden of showing that any delays were excusable."); *cf. TGC Contracting Corp. v. United States*, 736 F.2d 1512, 1515 (Fed. Cir. 1984) ("When . . . the contractor claims that his financial inability to perform is due to the government's failure to make the required progress payments, the burden is on the contractor to establish that the progress payments were erroneously withheld and that the withholding of such progress payments was the primary or controlling cause of the contractor's default.") (citing *R.C. Hudson & Assocs., Inc.*, 76-2 B.C.A. (CCH) ¶ 12,201 (1976); *Guenther Mfg. Co.*, 73-2 B.C.A. (CCH) ¶ 10,327 (1973)).

### 1.      SCI Was Required To Continue Working Regardless Of A Delay In Payment

SCI's delayed payment claim is without merit, because SCI was obligated to continue working notwithstanding the delays in payments.  Between May 29, 2002, and November 27,

2002, SCI and the Government disputed whether SCI should be paid on a cost-plus or firm fixed-price basis. PPFUF ¶¶ 15-32; Def. Resp. to PPFUF ¶¶ 15-32. On November 27, 2002, SCI stopped work upon the project. PPFUF ¶ 33; Def. Resp. to PPFUF ¶ 33. SCI resumed work upon the project on January 24, 2003. PPFUF ¶ 41; Def. Resp. to PPFUF ¶ 41.

The disputes clause, which was incorporated by reference into the contract, provides that "pending final resolution of any request for relief, claim, appeal, or action arising under the contract," the contractor must "proceed diligently with performance of this contract" and "comply with any decision of the Contracting Officer." 48 C.F.R. § 52.233-1(i). "[T]he disputes clause prohibits a contractor from stopping work pending litigation, and it further indicates that in the normal course contractors will be expected to perform as directed and to seek an equitable adjustment to recover the cost of the additional work if that work was not required by the contract." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1266 (Fed. Cir. 1999) (citing S. Rep. No. 95-1118, at 32, *reprinted in* 1978 U.S.C.C.A.N. 5235, 5266). Thus, "contractors are obligated under the disputes clause to continue work 'without stopping to litigate.'" *Id.* (quoting S. Rep. No. 95-1118).

Additionally, a contractor is required to continue performing even when "the contractor has been compelled to perform the work with its own money—in the total absence of contract payments or progress payments." *Richlin Sec. Serv. Co. v. Chertoff*, 437 F.3d 1296, 1301 (Fed. Cir. 2006) (quoting S. Rep. No. 95-1118). The contractor may recover interest when it has incurred a "cost of money to finance [the] additional work." *Id.* (quoting S. Rep. No. 95-1118); *accord* 31 U.S.C. § 3902(c)(1); 41 U.S.C. § 7109; 48 C.F.R. § 52.232-27(a)(3).

SCI does not cite any authority that delayed payments render a contractor's refusal to perform an excusable delay, and we are not aware of any such authority. Instead, SCI cites

several inapposite cases that were decided before the enactment of the CDA in 1978 and the Prompt Payment Act ("PPA"), 31 U.S.C. §§ 3901–3905, in 1982.  For example, in *Northern Helex Co. v. United States*, 455 F.2d 546, 550 (Ct. Cl. 1972), the Court found that the Government's failure to make progress payments for over a year, rendering the Government in arrears by several million dollars, was a material breach that justified the contractor's termination of the contract.  *Id.* at 550.  The Court explained that "[p]erhaps mere delay in payment, for a while, would not be a material breach."  *Id.*  The Court also noted that the contract's "Force Majeure" clause, which dealt with the inability of a party to carry out its obligations because of *force majeure*, specifically excepted the obligation to make payments.  *Id.*

In this case, the contract does not contain a *force majeure* clause, and payments to SCI were delayed for four or five months, not for over a year as in *Northern Helex*.  Moreover, SCI does not present any evidence regarding the amount that the Government was in arrears.  Further, this Court has found that cases that predate the CDA and the PPA, including *Brooklyn & Queens Screen Manufacturing Co. v. United States*, 97 Ct. Cl. 532 (1942), which SCI cites, are inapposite to claims that the Government failed to pay overdue invoices.  *See Envtl. Safety Consultants, Inc. v. United States*, 95 Fed. Cl. 77, 99 n.26 (2010).

Further, the contract incorporated the prompt payment for construction contracts clause, 48 C.F.R. § 52.232-27.  "Where, as here, the contract contains a specific remedy-granting clause that pertains to progress payment disputes, that clause governs."  *Morganti Nat'l, Inc. v. United States*, 49 Fed. Cl. 110, 141 (Fed. Cl. 2001), *aff'd*, 36 F. App'x 452 (Fed. Cir. 2002).  Pursuant to the prompt payment clause, SCI "is entitled to interest for late payments, which would remedy any damages sustained as a result of [the Air Force's] late payments."  *Id.* (citing 48 C.F.R.

§ 52.232-27).  "In such circumstances, the contract clause mitigates the materiality of the

breach."  *Id.* (citation omitted).

Even assuming for the sake of argument that the delayed payment constitutes a material

breach, SCI's continued performance of the contract after January 2003 constitutes an election to

continue performance notwithstanding the breach, which waived SCI's right to assert that the

breach discharged its obligation to perform.  *See Old Stone Corp. v. United States*, 450 F.3d

1360, 1371 (Fed. Cir. 2006) ("When one party commits a material breach of contract, the other

party has a choice between two inconsistent rights—he or she can either elect to allege a total

breach, terminate the contract and bring an action for restitution, or, instead, elect to keep the

contract in force, declare the default only a partial breach, and recover those damages caused by

that partial breach." (quoting 13 *Williston on Contracts* § 39:32 (4th ed. 2000)) (quotation marks

and alterations omitted)); *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1383 (Fed.

Cir. 2004) ("In order to preserve its claim of a prior material breach giving rise to the right to

terminate the contract, the [non-breaching party] had to treat [the breaching party] as if it had

breached the contract."); *Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313-17 (1976)

(finding that plaintiffs had elected to continue contract because of their failure to take any action

to end it, their continued performance, their insistence upon continued Government performance,

and their acceptance of that performance); 14 *Williston on Contracts* § 43:15 (4th ed. 2000)

(explaining that faced with material breach, one has choice "to continue to perform under the

contract or to cease to perform, and conduct indicating an intention to continue the contract . . .

in effect waiv[es] the right to assert that the breach discharged any obligation to perform").  The

cases cited by SCI are in accord.  Further, SCI does not cite any authority to support its argument

that during a dispute that results in a delay of payments to the contractor, the contractor may

consider the Government in material breach, stop working until the dispute is resolved, then return to work.  Therefore, SCI "waived its right to treat [the Government's] actions as having terminated the contract," *Barron Bancshares*, 366 F.3d at 1383, and SCI's refusal to work from November 27, 2002 to January 24, 2003 does not constitute excusable delay.

> ### 2.      The Government Never Extended The Contract Completion Date Past December 19, 2002, And, Even If It Did, SCI Did Not Satisfy The Conditions Of The "Agreement" Upon Which It Purports To Rely

SCI's argument that the Government "agreed to further extensions to the contract and a completion date of at least May 2, 2003, even though that was never reduced to a formal modification of the contract," Pl. Br. at 2, is baseless.  The January 17, 2003 meeting minutes cited by SCI indicate that the CO, Edward Baker, did not attend the meeting.  Pl. Ex. 24.[2] Further, the draft agreement that SCI's president signed on April 1, 2003 was *not* signed by the CO.  Pl. Ex. 25.  It is well-settled that only the CO possesses actual authority to modify a contract.  *See Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344-46 (Fed. Cir. 2007). Therefore, any purported "agreement" reached during the meeting, including any contract modifications, did not bind the Government.  *Id.*  Moreover, SCI's argument that "it wasn't until SCI received the government's proposed bilateral modification P00014 on July 10, 2003 that SCI became aware that the government was taking the position that the contract completion date was December 19, 2002," Pl. Br. at 25, is belied by the fact that, in February 2003, SCI executed a bilateral modification that extended the contract completion date to December 3, 2002, and in March 2003, SCI executed a bilateral modification that stated that the contract completion date was December 3, 2002.  DPFUF ¶¶ 5-6.

---

[2] "Pl Ex. _" refers to the exhibits attached to plaintiff's proposed findings of uncontroverted fact.

Even assuming for the sake of argument that the Government had entered into an agreement containing the terms described in the documents SCI cites, SCI did not perform a condition precedent to that putative agreement.  Conditions precedent "are those *facts and events*, occurring *after the making of a valid contract*, that must exist or occur before there is a right to immediate performance, before there is a breach of a contract duty and before the usual judicial remedies become available."  8 C. McCauliff, *Corbin on Contracts* § 30.7, at 14 (rev. ed. 1999); *see also B-B Co. v. Piper Jaffray & Hopwood, Inc.*, 931 F.2d 675, 678 (10th Cir. 1991); *Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 169 (2008); *Brazos Elec. Power Coop., Inc. v. United States*, 49 Fed. Cl. 398, 405 (2001); 8 C. McCauliff, *Corbin on Contracts* § 31.2, at 49; S. Williston, *Williston on Contracts* § 669 (3d ed. 1961) ("Since an express condition . . . depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself.  Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties.").[3]  That is, "if a contractual duty is subject to a condition *precedent*, that condition must be satisfied *before* the duty arises."  *Landmark Land Co., Inc. v. Fed. Deposit Ins. Corp.*, 256 F.3d 1365, 1376 (Fed. Cir. 2001); *see also Lester v. Resolution Trust Corp.*, 994 F.2d 1247, 1254 (7th Cir. 1993) ("A condition precedent is one which must be performed before . . . the other party is obligated to perform."); *Favell v. United States*, 22 Cl. Ct. 132, 137 (1990) ("'A condition is an event, not certain to occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" (quoting Restatement (Second) of Contracts

---

[3]  Because of the confusion sometimes engendered by the distinctions between conditions subsequent and conditions precedent, the American Law Institute ("ALI") prefers the more generic term "conditions."  Restatement (Second) of Contracts, Ch. 9, Topic 5, Conditions and Similar Events, at 159 (1981).  ALI defines a condition as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."  *Id.* § 224, at 160.

("Restatement") § 224)).  "A fact or event may be made a condition of a contract right and duty

by any form of words capable of interpretation."  3A A. Corbin, *Corbin on Contracts* § 639, at

51 (1960).

In establishing conditions to the duty of subsequent performance, "[s]ometimes the

parties themselves fix the order of performance by the language of their agreement."  2 E.

Farnsworth, *Farnsworth on Contracts* § 8.11 (3d ed. 2004).  If a condition does not occur,

whether through breach or another cause, the party fails to meet the condition, and acquires no

right to enforce the promise.  *Id.*; *see also Loud v. Pomona Land & Water Co.*, 153 U.S. 564, 577

(1894) (agreement to convey land "after the making of the payment and full performance"

rendered such payment and performance a condition precedent to the duty to convey);

Restatement § 237 ("[I]t is a condition of each party's remaining duties to render performances

to be exchanged under an exchange of promises that there be no material failure by the other

party to render any such performance due at an earlier time").  The non-occurrence of this

condition "excuses performance by the party whose performance is conditioned."  13 R. Lord,

*Williston on Contracts* § 38.8, at 405 (4th ed. 2000); *see also Colum. Gas Sys., Inc. v. United*

*States*, 50 F.3d 233, 240 (3d Cir. 1995).

In this case, the meeting minutes and draft agreement cited by SCI state, in pertinent part,

> The Government agrees that if SCI completes the contract by 2
> May 03, then the Government will not seek liquidated damages of
> any kind; however, if SCI fails to complete the contract by the
> above agreed on date, the Government reserves the right to assert
> any liquidated damages, if any, that may have accrued during the
> life of the contract.

Pl. Exs. 24, 25.  In the draft agreement, the date has been changed by hand to "14 June 03."  Pl.

Ex. 25.  It is undisputed that the contract was not completed by May 2, June 14, or June 15, 2003

– the three dates identified by SCI in its brief to which the Government allegedly agreed for a

contract completion date.  *See* Pl. Br. at 2, 6, 18, 25-26, 28, 31-32.  Therefore, the Government's

alleged duty to refrain from asserting liquidated damages never arose.

Further, to the extent that SCI is asserting that the Government's assessment of liquidated

damages notwithstanding that agreement constitutes bad faith, that argument has already been

rejected by this Court.  *See* Order dated Jan. 8, 2010, at 7 ("Whether there was, or was not, a

breach of the implied duty of good faith and fair dealing on the part of the Air Force in its

assessment of liquidated damages against SCI is entirely irrelevant to the contractual dispute

before the court.").

### C.      SCI Cannot Establish Excusable Delay For The Period Of August 1, 2003 Through January 7, 2004

Even assuming for the sake of argument that the Court possesses jurisdiction to entertain

a challenge to liquidated damages based upon SCI's allegations of post-August 1, 2003

excusable delay, SCI's only discernable argument regarding the period after August 1, 2003 is

that the Government is not entitled to liquidated damages after the date of "substantial

completion," which the Government's expert opined was September 15, 2003 and SCI's expert

concluded was August 8, 2003.  Pl. Br. at 2.  That argument is meritless.

Among other provisions, the contract incorporated the liquidated damages provision

prescribed by 48 C.F.R. § 52.211-12, which provides for liquidated damages "for each calendar

day of delay until the work is completed or accepted," and included a liquidated damages rate of

$2,022 per calendar day of delay.  DPFUF ¶ 1.  Thus, the Government is entitled to liquidated

damages through the earlier of the date of final completion or acceptance.  *Cf. Delhur Indus.*, 95

Fed. Cl. at 468 (contract provided, in part, that 20 percent of liquidated damages would be

assessed "for each day beyond the time allowed to complete the contract beginning with the day

after substantial completion and ending with the date of final completion and acceptance").  In

this case, the date of final completion was January 7, 2004, because heating for the facility was completed in late November or early December 2003, cable television installation was completed on January 7, 2004, and the Air Force began housing guests in the facility after January 7, 2004. DPFUF ¶¶ 8, 10.  Accordingly, the Government is entitled to liquidated damages for at least the period of August 1, 2003 through January 7, 2004.

Even assuming for the sake of argument that the Government is not entitled to liquidated damages after the date of substantial completion, the project was not substantially completed until January 7, 2004.  As the United States Court of Appeals for the Federal Circuit has explained,

> A project should be considered substantially completed when it is capable of being used for its intended purpose.  In determining whether the project is capable of being used for its intended purpose, it is necessary to consider the specific provisions laid out in the contract.  Thus, it is first necessary to identify the contract provisions defining the parties' expectations as to the owner's reasonable use of its facility.  A finding of substantial completion is only proper where a promisee has obtained, for all intents and purposes, all the benefits it reasonably anticipated receiving under the contract.

*Kinetic Builder's, Inc. v. Peters*, 226 F.3d 1307, 1315-16 (Fed. Cir. 2000); *see also Franklin E. Penny Co. v. United States*, 524 F.2d 668, 677 (Ct. Cl. 1975) ("[T]he doctrine [of substantial completion] should not be carried to the point where the non-defaulting party is compelled to accept a measure of performance fundamentally less than had been bargained for.").  In this case, the facility was not capable of serving its intended purpose as a VOQ until heating and cable television installation were completed, because the contract required SCI to install heating and cable television systems.  *See* DPFUF ¶ 1; *see also Kinetic Builder's*, 226 F.3d at 1315-16; *Franklin E. Penny*, 524 F.2d at 677; *cf. J & A Pollin Constr. Company*, GSBCA 2780, 72–2 BCA 8562 (holding that despite 96% completion of building to be used for college classes, there

20

was no substantial completion until ventilation and heat were available).  Accordingly, the Air

Force did not begin housing guests in the facility until after heating and cable television

installation were completed.  DPFUF ¶ 8.

Thus, the Government is entitled to liquidated damages for the period of December 19,

2002, the modified contract completion date, to January 7, 2004, the date when the CO found the

VOQ was completed and capable of being used for its intended purpose.

**D.**     **SCI's Repair and Replacement Of Fan Coils Does Not Constitute Excusable Delay**

SCI argues that the Government's alleged delay in approving SCI's proposal for damage

to blower or fan coils and its alleged delay issuing a modification that extended the contract

completion date constituted Government-caused or concurrent delays.  Pl. Br. at 27-33.

However, SCI concedes that its "proposal for the repair of the fan coil units was submitted on

May 15, 2003 and requested a 16-day contract extension."  Pl. Br. at 28.  That request was

granted first in a bilateral modification that SCI refused to sign, and then in a unilateral

modification.  DPFUF ¶ 7.  SCI does not explain how much time beyond those 16 days it should

have been granted.  Nor does it explain how any delay by the Government in approving SCI's

proposal for damage to blower or fan coils or issuing the modification constituted Government-

caused or concurrent delays.  In fact, SCI acknowledges that "[i]n order to mitigate project

delays, SCI started the coil replacement on June 9, 2003, before receiving the modification."  Pl.

Br. at 28.  Therefore, SCI has failed to satisfy its burden of showing that any delay by the

Government in approving SCI's proposal for damage to blower or fan coils and its alleged delay

issuing a modification that extended the contract completion date delayed the overall contract

completion, *i.e.*, that it affected the critical path of performance.  *See Sauer*, 224 F.3d at 1345.  In

fact, SCI acknowledges that the Government's expert opined that the fan coil units were *not* on

the critical path and, therefore, that work related to the fan coil units did not delay the project. Pl. Br. at 29.  SCI does not point to any evidence that work on the fan coils was on the critical path.  Nor does SCI argue that any delay in replacing and repairing the fan coils affected the critical path such that overall contract completion was delayed.  *See Sauer*, 224 F.3d at 1345. Therefore, SCI has failed to satisfy its burden of showing that any delays related to replacement and repair of the fan coils constituted excusable delay.  *See id.* at 1345, 1347.

### E. SCI Does Not Identify Any Other Excusable Delays After May 29, 2002

SCI fails to point to any other excusable delays that resulted in the project not being completed by December 19, 2002.  Therefore, SCI has failed to satisfy its burden of showing it is entitled to excusable delays.  Notably, SCI does not address its failure to work on the project for over two months in mid-2002.  On January 31, 2002, the CO issued a suspension of work order for all work upon the contract.  DPFUF ¶ 2.  Among other things, the order stated that a 30-day remobilization period would be permitted at the expiration of the suspension period.  DPFUF ¶ 2. On May 29, 2002, the Government issued unilateral modifications P00009 and P00010, which, among other things, rescinded the suspension of work order, increased the contract amount, and extended the contract completion date to November 28, 2002.  DPFUF ¶ 3.  Thus, the 30-day remobilization period ended on June 28, 2002.  Nevertheless, SCI did not perform any work upon the project from May 29, 2002 to September 2, 2002.  DPFUF ¶ 4.  SCI does not explain in its brief why it did not perform any work during the 66-day period of June 29, 2002 to September 2, 2002, and SCI does not point to any evidence that its failure to work during that period constitutes excusable delay.

Nor does SCI address any other delays that caused completion of the project on January 7, 2004, instead of the modified contract completion date of December 19, 2002.  Therefore, the

Government is entitled to summary judgment to the extent that SCI has failed to satisfy its burden of showing that it is entitled to excusable delay for all 384 days of delay between December 19, 2002 and January 7, 2004.  *See Sauer*, 224 F.3d at 1345, 1347; *see also Sunshine Constr. & Eng'g*, 64 Fed Cl. at 371-73 (liquidated damages may be apportioned where there is sequential delay); *R.P. Wallace*, 63 Fed. Cl. at 410-13 (same).

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests that the Court grant defendant's cross-motion for partial summary judgment and deny plaintiff's motion for partial summary judgment.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Jeffrey D. Klingman
JEFFREY D. KLINGMAN
Trial Attorney
Commercial Litigation Branch
Of Counsel:                                         Civil Division
LARRY M. ANDERSON                                   Department of Justice
Commercial Law and Litigation                       PO Box 480
Directorate                                         Ben Franklin Station
AFLOA/JAQ                                           Washington, DC  20044
1500 West Perimeter Road, Suite 1780                Telephone:  (202) 305-4436
Joint Base Andrews, MD  20762                       Facsimile:  (202) 353-7988

August 5, 2011                                      Attorneys for Defendant